UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN EDIOR,<br><br>      Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | No. EDCV 08-1697-RC<br><br>OPINION AND ORDER |

Plaintiff Ben Edior filed a complaint on December 3, 2008, seeking review of the Commissioner's decision denying his application for disability benefits. On June 1, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on July 15, 2009.

**BACKGROUND**

On March 31, 2006 (protective filing date), plaintiff, who was born on July 11, 1981, applied for disability benefits under the Supplemental Security Income program ("SSI") of Title XVI of the Social Security Act ("Act"), claiming an inability to work since

October 1, 2002, due to sickle cell disease, nephrotic syndrome, arthritis and gout. Certified Administrative Record ("A.R.") 9, 89-92, 101. The plaintiff's application was initially denied on May 31, 2006, and was denied again on April 3, 2007, following reconsideration. A.R. 48-52, 55-66. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Thomas P. Tielens ("the ALJ") on April 28, 2008. A.R. 16-45, 63. On June 23, 2008, the ALJ issued a decision finding plaintiff is not disabled. A.R. 6-15. The plaintiff appealed this decision to the Appeals Council, which denied review on September 26, 2008. A.R. 1-5.

## DISCUSSION

### I

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),

1 cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 572 F.3d at 591.

3     The claimant is "disabled" for the purpose of receiving benefits
4 under the Act if he is unable to engage in any substantial gainful
5 activity due to an impairment which has lasted, or is expected to
6 last, for a continuous period of at least twelve months. 42 U.S.C.
7 § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the
8 burden of establishing a prima facie case of disability." Roberts v.
9 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
10 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

12     The Commissioner has promulgated regulations establishing a five-
13 step sequential evaluation process for the ALJ to follow in a
14 disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ
15 must determine whether the claimant is currently engaged in
16 substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the
17 **Second Step**, the ALJ must determine whether the claimant has a severe
18 impairment or combination of impairments significantly limiting him
19 from performing basic work activities. 20 C.F.R. § 416.920(c). If
20 so, in the **Third Step**, the ALJ must determine whether the claimant has
21 an impairment or combination of impairments that meets or equals the
22 requirements of the Listing of Impairments ("Listing"), 20 C.F.R.
23 § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the
24 **Fourth Step**, the ALJ must determine whether the claimant has
25 sufficient residual functional capacity despite the impairment or
26 various limitations to perform his past work. 20 C.F.R. § 416.920(f).
27 If not, in **Step Five**, the burden shifts to the Commissioner to show
28 the claimant can perform other work that exists in significant numbers

in the national economy. 20 C.F.R. § 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 31, 2006, his application date. (Step One). The ALJ then found plaintiff has the severe impairments of sickle cell disease and nephrotic syndrome; however, he also has mild depression, which is not a severe impairment. (Step Two). The ALJ also found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). Next, the ALJ determined plaintiff has no past relevant work. (Step Four). Finally, the ALJ found

---

[1] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

4

plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled.  (Step Five).

**II**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent application of the severity requirement violates the Social Security Act by denying benefits to claimants who do meet the statutory definition of disabled.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities.  Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities.").  Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Webb, 433 F.3d at 686.

Although the ALJ found, in Step Two, that plaintiff has the severe impairments of sickle cell disease and nephrotic syndrome, plaintiff complains the ALJ erred in not finding his mental impairment and obesity are also severe impairments. There is no merit to this claim.

**A.   Mental Impairment:**

On March 20, 2007, Linda Smith, M.D., examined plaintiff and diagnosed him as having an unspecified depressive disorder and an unspecified anxiety disorder and determined plaintiff's Global Assessment of Functioning ("GAF") was 62.[2] A.R. 178-84. Dr. Smith found plaintiff "is mildly impaired." A.R. 183. More specifically, she found plaintiff "had a couple of problems with memory on the mental status exam," but not what she "would consider substantial problems." Id. Thus, Dr. Smith concluded plaintiff is not impaired in his ability to understand, remember, or complete simple commands,

---

[2] A GAF of 62 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

6

but is "mildly" impaired in his ability to: understand, remember, or complete complex commands; interact appropriately with supervisors, co-workers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace; and maintain persistence and pace in a normal workplace. A.R. 183-84. Apart from Dr. Smith, the only other physician to assess plaintiff's mental condition was a nonexamining psychiatrist, Herbert Hurwitz, M.D., who found plaintiff does not have a severe mental impairment. A.R. 202-12.

Here, the ALJ concluded plaintiff does not have a severe mental impairment, A.R. 11, 13, and this finding does not contradict the opinion of Dr. Smith; rather, it is supported by the opinions of both Drs. Smith and Hurwitz. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997).

**B.   Obesity:**

"Obesity is a complex, chronic disease characterized by excessive accumulations of body fat." Social Security Ruling ("SSR") 02-01p, 2000 WL 62809, *2 (S.S.A.). "Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal[, respiratory, and cardiovascular] system[s], and

disturbance of [these] system[s] can be a major cause of disability in individuals with obesity." 20 C.F.R. § 404, Subpart P, App. 1, Listing 1.00Q, 3.00I, and 4.00F. "Obesity may also cause or contribute to mental impairments such as depression." SSR 02-01p, 2000 WL 62809 at *3.

The Court finds Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003), wherein the Ninth Circuit held the ALJ committed legal error by failing to consider the claimant's obesity, is inapposite here. First, unlike *Celaya*, plaintiff was represented by counsel at his administrative hearing, A.R. 16-48, and counsel had the opportunity to raise the claim of plaintiff's purported obesity. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). Second, also unlike *Celaya*, plaintiff's purported obesity is in the most mild category since plaintiff testified he is 5'4" tall and weighs 184 pounds, A.R. 40, which equates to a Body Mass Index ("BMI") of 31.6.[3] Finally, the record contains absolutely no evidence demonstrating plaintiff's

---

[3] Under Social Security Ruling 02-01p,

> overweight and obesity [are classified] in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as "overweight" and a BMI of 30.0 or above as "obesity." [¶] The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.

Id. at *2.

1  obesity exacerbates his other impairments, see SSR 02-1p, 2000 WL
2  628049 at *4 ("There is no specific level of weight or BMI that
3  equates with a 'severe' or a not severe' impairment.  Neither do
4  descriptive terms for levels of obesity (e.g., "severe," "extreme," or
5  "morbid" obesity) establish whether obesity is or is not a "severe"
6  impairment for disability program purposes."), or has any effect on
7  his ability to perform basic work activities.  Verduzco v. Apfel, 188
8  F.3d 1087, 1089 (9th Cir. 1999); see also Burch, 400 F.3d at 683
9  ("Even on appeal, [plaintiff] has not pointed to any evidence of
10 functional limitations due to obesity which would have impacted the
11 ALJ's analysis.").  Therefore, plaintiff has not shown the ALJ erred
12 in Step Two.

**III**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes, 276 F.3d at 460; see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift).").  Here, the ALJ found plaintiff:

> has the [RFC] to perform light work[4] . . . except he is

---

[4] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the

>     limited to occasional climbing, balancing, stooping,
>     kneeling, crouching, and crawling; he is limited to no
>     climbing of ladders, ropes, or scaffolds; and he must avoid
>     exposure to cold, heat, wet, humidity, and hazards such as
>     heights and fast-moving machinery.

A.R. 11 (footnote added). However, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly consider a referral made by treating physician Daniel Wolfsen, M.D., improperly found plaintiff was not a credible witness, and erroneously failed to address the side effects of plaintiff's medication. There is no merit to these claims.

**A.   Treating Physician's Opinion:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725;

---

ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

10

Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  However, in assessing a claimant's application for disability benefits, an ALJ need not set forth verbatim every statement a physician makes; rather, the ALJ need only discuss evidence that is significant and probative of a claimant's disability claim.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

On April 30, 2007, plaintiff's treating physician, Dr. Wolfsen, referred plaintiff for a pain management evaluation.  A.R. 229.  However, this referral does not offer an opinion as to plaintiff's impairments, limitations or prognosis; thus, its significance is unclear, and, standing alone, it does not contradict any finding made by the ALJ.  Accordingly, the ALJ did not err in not discussing the referral.

**B.   Credibility:**

The plaintiff testified he cannot work because he experiences pain and swelling throughout his body, including in his neck, lower back, arms, hands, knees, ankles and stomach, his kidneys flare up, his joints stiffen, and he has urinated blood on a couple of occasions.  A.R. 21-29.  The plaintiff also stated his fingers sometimes swell so he cannot bend them, make a fist, or grab something, and if he does not use his hands they get stiff, but if he does use them he experiences shoulder and wrist pain.  A.R. 24-25.  Further, plaintiff testified he has migraine headaches every day or every other day, and sometimes his ankle pain is so bad he has to crawl.  A.R. 25-26.  He also stated he retains fluids and most of the time he swells "real bad where I can't walk [or] talk[,]" his eyes get

1 puffy, his stomach gets "real big[,]" and he cannot do anything. A.R.
2 30. The plaintiff also complained he has a bad memory, A.R. 36, and
3 testified he has been repeatedly hospitalized for various conditions.
4 A.R. 20-21, 31. Finally, plaintiff estimated he can only sit for 20
5 minutes, stand for 5 to 10 minutes, and walk about 50 yards at a slow
6 pace because of his pain, and he has to lie down about 2-4 hours out
7 of an 8-hour day, A.R. 38-40, and he usually cannot lift a full gallon
8 of milk, cannot grip with his hands, and cannot drive because of his
9 pain. A.R. 37-38.

11     Once a claimant has presented objective evidence that he suffers
12 from an impairment that could cause pain or other nonexertional
13 limitations, the ALJ may not discredit the claimant's testimony
14 "solely because the degree of pain alleged by the claimant is not
15 supported by objective medical evidence." Bunnell v. Sullivan, 947
16 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d
17 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's
18 subjective complaints are not credible, he "'must provide specific,
19 cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968,
20 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625,
21 635 (9th Cir. 2007). Furthermore, if there is medical evidence
22 establishing an objective basis for some degree of pain and related
23 symptoms, and no evidence affirmatively suggesting the claimant is
24 malingering, the ALJ's reasons for rejecting the claimant's testimony
25 must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec.
26 Admin., 169 F.3d 595, 599 (9th Cir. 1999); Vasquez, 572 F.3d at 591
27 (9th Cir. 2009).
28 //

1        In his decision, the ALJ concluded that plaintiff's "statements
2   concerning the intensity, persistence and limiting effects of [his]
3   symptoms are not credible[,]" in part, because they are inconsistent
4   with the medical record.  A.R. 13.  For instance, although plaintiff
5   testified he had been hospitalized in 2005 at the Arrowhead Regional
6   Medical Center and Loma Linda University Medical Center, A.R. 103-04,
7   and repeatedly hospitalized over the years, see also A.R. 169 (On
8   March 7, 2007, plaintiff told examining physician "he has been in and
9   out of the hospital frequently since a young age" and "was last
10  hospitalized about six months ago at the Arrowhead Regional Medical
11  Center"), there is absolutely nothing in the medical record showing
12  such hospitalizations, see, e.g., A.R. 141-54, 163-68, and
13  "[c]ontradiction with the medical record is a sufficient basis for
14  rejecting the claimant's subjective testimony."  Carmickle v. Comm'r,
15  Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); Bray v. Astrue,
16  554 F.3d 1219, 1227 (9th Cir. 2009).

18       The ALJ also based his adverse credibility determination of
19  plaintiff on the sporadic nature of plaintiff's health care, which
20  showed plaintiff "did not have a primary care physician for three
21  years before establishing care at the Arrowhead Health Center in
22  October 2005[,]" and plaintiff had no "recent treatment for any
23  impairment."  A.R. 13.  Certainly, an "ALJ is permitted to consider
24  lack of treatment in his credibility determination[,]" Burch, 400 F.3d
25  at 681; see also Orn, 495 F.3d at 638 ("[I]f a claimant complains
26  about disabling pain but fails to seek treatment . . . for the pain,
27  an ALJ may use such failure as a basis for finding the complaint
28  unjustified or exaggerated.").  Thus, this finding also supports the

13

1 ALJ's adverse credibility determination.[5]  See, e.g., Batson v. Comm'r
2 of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ
3 properly rejected claimant's testimony based, in part, on fact that
4 claimant claimed he did not receive any medical treatment until almost
5 one year after alleged injury.).

7  Furthermore, in finding plaintiff was not credible, the ALJ also
8 found that there was "no treating source statement" regarding
9 plaintiff's RFC and no physician had determined plaintiff was
10 disabled, A.R. 13, and both of these findings support the ALJ's
11 adverse credibility determination.  See, e.g., Matthews v. Shalala, 10
12 F.3d 678, 680 (9th Cir. 1995) (substantial evidence supported finding
13 claimant could do a narrow range of medium work where no examining
14 physician concluded claimant was totally disabled).  For all these
15 reasons, "[t]he ALJ gave specific, clear and convincing reasons for
16 discounting [plaintiff's] testimony."  Thomas, 278 F.3d at 959; Burch,
17 400 F.3d at 681.

19 **C.  Side Effects**:
20  In determining a claimant's limitations, the ALJ must consider
21 all factors that might have a significant impact on an individual's
22 ability to work, including the side effects of medication.  Erickson
23 v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993); Varney v. Sec'y of
24 Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988).  Thus, when

---

[5] Although plaintiff claims he didn't "have money or insurance to see a doctor[,]" A.R. 35, this does not explain his lack of medical care prior to October 2005, when he obtained such care.

14

a claimant testifies he is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard the testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)." Varney, 846 F.2d at 585.

Here, plaintiff testified at the administrative hearing that his medications sometimes make him tired, A.R. 32, and the ALJ rejected this testimony based on plaintiff's lack of credibility and to the extent it was inconsistent with the RFC determination. A.R. 13-14. The plaintiff's lack of credibility is a sufficient and proper reason for discrediting a claimant's testimony. See, e.g., Thomas, 278 F.3d at 960 (ALJ properly rejected claimant's claimed side effects, including dizziness and difficulties in concentration, based on a finding claimant lacked credibility). Moreover, since plaintiff did not report any alleged medication side effects to any physician, his claim is also not supported by the medical record. See, e.g., Greger, 464 F.3d at 973 (ALJ did not err in assessing claimant's RFC when claimant did not report alleged side effect of fatigue to any physician); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (The ALJ properly rejected claimant's claim that his use of prescription narcotics disabled him when claimant "produced no clinical evidence showing that narcotics use impaired his ability to work.").

**IV**

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy.

15

Bray, 554 F.3d at 1222; Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007).  To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson, 60 F.3d at 1432).  There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[6]  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Bray, 554 F.3d at 1223 n.4.  However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted."  Thomas, 278 F.3d at 960; Bray, 554 F.3d at 1223 n.4.  Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Valentine, 574 F.3d at 690; Thomas, 278 F.3d at 956, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  Tackett, 180 F.3d at 1101.

Here, the ALJ asked vocational expert Malcolm J. Brodzinsky the

---

[6] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity."  Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

16

following hypothetical question:

> I'd ask you to consider that you're dealing with an individual the same as our claimant, who has the same educational background and past work experience. Assume for this hypothetical that this person could do light work, only occasionally climb, balance, stoop, kneel, crouch, or crawl; should use no ladders, ropes, or scaffolds; would need to avoid concentrated exposure to cold, heat, wet environments, humidity, and hazards such as heights and fast moving equipment. Is this hypothetical consistent with any work in the national or local economy?

A.R. 43. The vocational expert responded that the individual could perform the full range of light assembly work, such as production assembler (Dictionary of Occupational Titles ("DOT")[7] no. 706.687.010) and cashier II (DOT no. 211.462-010). A.R. 43-44. However, plaintiff contends the hypothetical question to the vocational expert was incomplete because it did not include his testimony, his obesity, and the "mild" mental limitations found by Dr. Smith. There is no merit to plaintiff's claims.

First, since the ALJ found plaintiff's testimony about his pain was not entirely credible, and that determination is supported by substantial evidence, as discussed above, the hypothetical question to

---

[7] The DOT is the Commissioner's primary source of reliable vocational information. Johnson, 60 F.3d at 1434 n.6; Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

17

the vocational expert did not have to include plaintiff's testimony. See, e.g., Greger, 464 F.3d at 973 (9th Cir. 2006) ("The ALJ . . . 'is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.'" (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988) ("[E]xclusion of some of a claimant's subjective complaints in questions to a vocational expert is not improper if the ALJ makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain."). Similarly, since there is no evidence showing any functional limitations from plaintiff's obesity, also discussed above, the ALJ did not err in failing to include any obesity limitations in his hypothetical question to the vocational expert. Burch, 400 F.3d at 684. Finally, since Dr. Smith found plaintiff has only "mild" mental limitations, the ALJ's failure to include those limitations in the hypothetical question was harmless error since they have no effect on plaintiff's ability to work. See, e.g., Tommasetti, 533 F.3d at 1038 ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (citations and internal quotation marks omitted)); Stroh v. Astrue, 2010 WL 572590, *9 (D. Or.) ("[A]ny error arising from the ALJ's failure to incorporate the mild limitations in concentration, persistence, and pace into the [RFC] assessment was harmless. The ALJ provided sufficient reasons for concluding that [claimant's] mental impairment, from which these limitations arise, is not 'severe' within the meaning of relevant regulations. . . . Given that [claimant's] mental impairment was reasonably found to cause no

more than a minimal effect on her ability to work, the ALJ's failure to incorporate mild limitations in concentration, persistence, and pace into the residual functional capacity was harmless error." (citations omitted)).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  March 5, 2010          /S/ ROSALYN M. CHAPMAN
                              ROSALYN M. CHAPMAN
                              UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1697.mdo
3/5/10

19